Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUNA COMMERCIAL II, LLC<br><br>Demandante - Recurrido<br><br>v.<br><br>HOMERO GONZÁLEZ LÓPEZ; MARIE ELSIE LÓPEZ ADAMES T/C/C MARIE E. LÓPEZ ADAMES T/C/C MARIE LÓPEZ ADAMES, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Demandada - Peticionario | KLCE202400440 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: K CD2013-1582 (504)<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |
| LUNA COMMERCIAL II, LLC<br><br>Demandante - Peticionario<br><br>v.<br><br>HOMERO GONZÁLEZ LÓPEZ; MARIE ELSIE LÓPEZ ADAMES T/C/C MARIE E. LÓPEZ ADAMES T/C/C MARIE LÓPEZ ADAMES, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Demandada - Recurrido | KLCE202400445 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: K CD2013-1582 (504)<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

El Tribunal de Primera Instancia ("TPI"), aunque adelantó su criterio de que una deuda hipotecaria era exigible, se abstuvo de

---

[1] Los recursos fueron asignados a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, estos recursos, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLCE202300334).

resolver la reclamación por la vía sumaria, ello al entender que el récord no le permitía determinar la cuantía exacta de la deuda. Según se explica en detalle a continuación, concluimos que no es necesario un juicio para determinar la cuantía de la deuda, aunque, por virtud del cumplimiento tardío del banco con su obligación de ofrecer el refinanciamiento del último pago de un préstamo tipo *balloon*, el deudor no responde por pago alguno adicional al correspondiente al balance pendiente del principal y el interés pactado.

I.

En julio de 2013, Doral Bank ("Doral") presentó la acción de referencia, sobre cobro de dinero y ejecución de hipoteca, contra el Lcdo. Homero González López, su esposa, la Sa. Marie Elsie López Adames, y la sociedad de gananciales compuesta por ambos (los "Deudores"). En síntesis, alegó ser el tenedor de un pagaré que los Deudores suscribieron a su favor por la suma de $297,500.00, garantizado mediante una hipoteca constituida sobre un bien inmueble comercial sito en San Juan, Puerto Rico. Se alegó que los Deudores incumplieron con los términos de la obligación contraída. Los Deudores contestaron la Demanda.

Al cabo de numerosos trámites procesales, en mayo de 2022, Luna Commercial II, LLC (la "Acreedora"), presentó una *Moción Para Sustituir Parte Demandante*. En síntesis, informó que había adquirido el préstamo objeto de la Demanda (el "Préstamo"), mediante el endoso del correspondiente pagaré, por lo cual solicitó la sustitución de la parte demandante.

Una vez finalizado el descubrimiento de prueba, el 8 de septiembre de 2023, los Deudores instaron una *Solicitud de Sentencia Sumaria* (la "Moción de los Deudores"). En esencia, alegaron que no existía controversia sustancial que le impidiera al TPI concluir por la vía sumaria que la Acreedora es una tenedora de

mala fe pues, al momento de adquirir el pagaré, tenía conocimiento de las exigencias contenidas en un "Balloon Rider". Plantearon que la Acreedora conocía, o debía conocer, las obligaciones que incumplió Doral en cuanto al refinanciamiento del préstamo, según estipuladas en el "Balloon Rider" (el "*Rider*"). Los Deudores también señalaron que la Acreedora no tenía prueba de que estos hubiesen incumplido con sus obligaciones antes del vencimiento del pagaré. Así pues, sostuvieron que el pagaré no podía cobrarse, ni la hipoteca ejecutarse. Ante el alegado incumplimiento, afirmaron que el pagaré quedó inoperante y, por ende, no estaba vencido, líquido, ni era exigible, por lo cual, debía ser devuelto a los Deudores para su cancelación.

En igual fecha, la Acreedora también solicitó la resolución sumaria del pleito, mediante una *Moción en Solicitud de Sentencia Sumaria* (la "Moción de la Acreedora"). Alegó que los Deudores incumplieron con el pago de su obligación y que no existía controversia de hechos materiales que le impidiese al TPI dictar sentencia a su favor. En cuanto al *Rider*, la Acreedora alegó que era nulo debido a que no se elevó a escritura pública. Señaló que, de la copia certificada simple de la hipoteca, no se desprendía que el *Rider* hubiese sido incorporado a la escritura primaria, ni inscrito en el Registro de la Propiedad. En la alternativa, de ser válido el *Rider*, la Acreedora arguyó que este establecía ciertas condiciones que los Deudores debían cumplir antes de obtener el refinanciamiento. Añadió que, a la fecha del vencimiento del pagaré, Doral les ofreció a los Deudores alternativas de refinanciamiento que estos rechazaron. Sostuvo que los Deudores no había pagado la suma total del préstamo $277,107.09, según acordado. Por ende, solicitó que el TPI declarase la deuda vencida, líquida y exigible, y que ordenase a los Deudores el pago de lo adeudado, las costas, gastos

y honorarios de abogado o, de no poder satisfacer la suma adeudada, la ejecución de la hipoteca.

Oportunamente, cada parte se opuso a la solicitud de sentencia sumaria de la parte contraria.

Mediante un escrito denominado *Sentencia Parcial,* notificado el 7 de diciembre de 2023 (el "Dictamen"), el TPI determinó que no había controversia sobre los siguientes hechos:

1. Los esposos González López y López Adames suscribieron y emitieron un pagaré hipotecario a favor de Doral Bank o a su orden el día 21 de febrero de 2004, por la suma de $297,500.00 de principal, más intereses a razón de 7.95% anual.

2. Los esposos González López y López Adames constituyeron una hipoteca en garantía de] pagaré descrito en el párrafo anterior sobre las siguientes propiedades inmuebles: URBANA C-10; URBANA P-5; URBANA P-38: URBANA P-39 URBANA P-4 Y URBANA P-40.

3. La hipoteca fue constituida mediante escritura número 78, el día 21 de febrero de-2004 ante la Notario Teresita Navarro García, mediante la cual los esposos González López y López Adames se comprometieron a emitir pagos mensuales de $2,172.59 comenzando el 1 de abril de 2004, con un pago final englobado por la cantidad de $277.107.15 con fecha de vencimiento de 1 de marzo de 2011.

4. Al vencimiento del pagaré, los esposos González López y López Adames tenían un derecho condicionado de refinanciamiento del balance, según consta en el documento titulado "Balloon Rider", otorgado el 21 de febrero de 2004, el mismo día de la firma del pagaré.

5. El "Balloon Rider" enmienda y suplementa la Hipoteca.

6. Conforme al "Balloon Rider", a la fecha de vencimiento del pagaré los esposos González López y López Adames tenían el derecho de que el tenedor del pagaré les refinanciara la deuda si estos cumplían con ciertas condiciones allí expresadas.

7. Conforme a la sección 2 del "Balloon Rider", las condiciones para que el tenedor del pagaré extendiera un refinanciamiento a los esposos González López y López Adames eran:

a. Los esposos González López y López Adames tendrían que ser los titulares de los inmuebles;

b. Estar al corriente en los pagos mensuales de la hipoteca y no podrán haber tenido un atraso de

más de 30 días en los 12 meses previos a la fecha del vencimiento del pagaré;

c. El interés en el nuevo pagaré no podría ser más de 5% por encima del interés en el pagaré vencido, o sea por encima de 7.95%.

d. Los esposos González López y López Adames tendrían que solicitarlo por escrito al tenedor del pagaré en la forma prevista en la sección 5 del "Balloon Rider".

8. La sección 5 del "Balloon Rider" obligaba al tenedor del pagaré a:

a. Notificar a los esposos González López y López Adames con no menos de 60 días de anticipación al vencimiento del pagaré, cuánto sería el principal e intereses que tendrán que pagar al vencimiento del pagaré.

b. Orientar a los esposos González López y López Adames de que podían ejercer la opción del refinanciamiento condicionado al cumplimiento de las condiciones de la sección 2 del "Balloon Rider".

c. Enviar a los esposos González López y López Adames la información de su récord de pagos, incluyendo el nombre, posición y dirección de la persona representante de! tenedor del pagaré a quien los esposos González López y López Adames tenían que notificar para ejercer su derecho condicionado a refinanciamiento.

d. Si los esposos González López y López Adames cumplían con los requisitos, entonces podían ejercer el derecho de refinanciamiento enviando notificación de ello con 45 días de anticipación al vencimiento del pagaré.

e. Antes de la fecha del vencimiento, el tenedor del pagaré debía avisar a los esposos González López y López Adames cuál sería la tasa de interés del nuevo préstamo, su nuevo pago mensual y la fecha, hora y lugar para la firma de los documentos que fuesen requeridos.

f. El tenedor del pagaré tendría derecho a cobrarle a los esposos González López y López Adames un "fee" de procesamiento de $250.00 más el costo de la nueva póliza de título.

9. El "Balloon Rider" identifica al tenedor del pagaré ("Note Holder") como cualquier entidad a la que se le transfiera el pagaré y que tenga el derecho de recibir los pagos.

10. El "Note Holder" a la fecha en que venció el pagaré era el Banco Popular de Puerto Rico (BPPR).

11. En caso de litigio para el cobro del préstamo, los esposos estarían obligados a pagar el 10% del principal original al tenedor del pagaré, por concepto de costas y honorarios.

12. Los esposos González López y López Adames recibieron llamadas de Doral Bank donde les indicaron que su préstamo estaba atrasado y que tenían que refinanciar la propiedad.

13. Los esposos González López y López Adames no realizaron el último pago, por la suma de $277,107.09. según pactada en el pagaré, con fecha de vencimiento de 1 de marzo de 2011.

14. Los esposos González López y López Adames continuaron emitiendo pagos luego del vencimiento del Pagaré.

15. Los esposos González López y López Adames no solicitaron refinanciamiento por escrito a Doral Bank. Toda la comunicación fue verbal.

16. Doral Bank emitió una oferta de refinanciamiento mediante carta, el 26 de julio de 2013, dirigida a González López y López Adames, por el balance principal de $267,897.43, con un porciento de interés de 7.95% anual, mediante 248 pagos mensuales consecutivos de $2,199.75 al Banco Popular como "Investor Facility".

17. Doral Bank emitió una oferta de refinanciamiento mediante carta, el 27 de septiembre de 2013, dirigida a González López y López Adames, por el balance principal de $267,897.43, con un porciento de interés de 6.25% anual, mediante 14 pagos mensuales consecutivos de $1,938.09 al Banco Popular como "Investor Facility".

18. Los esposos González López y López Adames no aceptaron las ofertas de refinanciamiento, por estar en desacuerdo con los gastos de cierre estipulados en las distintas ofertas propuestas por Doral Bank.

19. Luna Commercial es el actual tenedor del pagaré debidamente endosado a su favor, por lo cual es la persona con derecho a exigir su cumplimiento.

20. La hipoteca que garantiza el pagare antes descrito se encuentra vencida, líquida y es exigible.

El TPI determinó que la Acreedora es la legítima tenedora del pagaré con garantía hipotecaria y que la deuda no ha sido satisfecha. Por consiguiente, concluyó que la reclamación de la Acreedora era legítima, y que la deuda estaba vencida, líquida y exigible. No obstante, aseveró que no podía todavía determinar la

cuantía de los pagos efectuados por los Deudores después del vencimiento del pagaré, por lo cual quedó en suspenso la cuantía por la cual responderían los Deudores.

El 22 de diciembre, tanto los Deudores como la Acreedora solicitaron la reconsideración del Dictamen; ambas mociones fueron denegadas por el TPI mediante unas órdenes notificadas el 13 de marzo.

En desacuerdo, el 11 de abril, los Deudores interpusieron uno de los recursos que nos ocupa (KLCE202400440); plantearon que el TPI había cometido los siguientes errores:

Primer Error: Erró el Honorable TPI al denegar incorporar determinaciones de hechos y conclusiones de derecho que son Ley del Caso (mediante la Resolución del 2015), y/o sustentadas por evidencia incontrovertida, del incumplimiento de Luna como tenedor del pagaré, de las condiciones del "balloon rider" que es parte integral del pagaré, de los pagos hacia la deuda de la parte apelante sin acreditar; entre otros, que impedían dictar sentencia sumariamente.

Segundo Error: Erró el Honorable TPI al dictar sentencia parcial de ejecución de hipoteca y cobro de dinero declarando líquida y exigible la deuda, sin recibir evidencia admisible o adicional a la que fuera declarada insuficiente por el propio Tribunal mediante la Resolución de 2015, que constituye la Ley del Caso.

Por su parte, el 12 de abril, la Acreedora presentó el otro recurso que nos ocupa (KLCE202400445); formuló los siguientes señalamientos de error:

Primer Error
Erró el TPI al no determinar que el balloon rider es nulo ab initio por no cumplir con los requisitos de forma que exige nuestro ordenamiento jurídico.

Segundo Error
Erró el TPI al determinar que existe controversia en torno al a procedencia de algún crédito por el dinero pagado por los apelados posterior al vencimiento del pagaré, cuando surge del expediente judicial que dichos pagos fueron aplicados a la deuda, por lo que debe dictarse sentencia final.

Subsiguientemente, se consolidaron los recursos y se acogieron los mismos como peticiones de *certiorari*, pues, mediante el Dictamen, el TPI no resolvió la totalidad de ninguna de las

reclamaciones del caso, por lo cual el mismo no constituye una sentencia apelable.[2]  Además, le ordenamos a los Deudores a que mostraran causa por la cual no debíamos expedir el auto de *certiorari* solicitado por la Acreedora y ordenar que se dicte sentencia sumaria en los términos solicitados por esta.  Los Deudores comparecieron y reprodujeron lo planteado anteriormente ante el TPI.  Resolvemos.

II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo.  *Meléndez González v. M. Cuebas, Inc.,* 193 DPR 100, 109 (2015).  Este mecanismo procede cuando no existe una controversia real sobre hechos materiales.  Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.  *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).  La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, llama a estos hechos *esenciales y pertinentes*.

La Regla 36, *supra*, impone un número de requisitos tanto al proponente de la sentencia sumaria como al que se opone a la misma.  La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos

---

[2] Adviértase que "[u]na sentencia es cualquier determinación que el Tribunal de Primera Instancia emita, la cual finiquite la cuestión litigiosa y de la que se pueda apelar".  Regla 42.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.1.  Para que lo dispuesto por el TPI constituyese una "sentencia", era necesario que lo único que faltase fuera ejecutarla. *García v. Padró*, 165 DPR 324, 332 (2005).  Por su parte, hemos determinado expedir el auto de *certiorari*, pues, por la naturaleza medular de lo resuelto por el TPI, están presentes las circunstancias que justifican nuestra intervención en esta etapa.  Véanse Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40; Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; 800 *Ponce de León Corp. v. AIG*, 205 DPR 163, 186 (2020) (la Regla 52.1, supra, no impide expedir el auto de *certiorari* cuando el dictamen interlocutorio "puede[] afectar sustancialmente el resultado de un pleito" o "limit[ar] sustancialmente [una] reclamación").

enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. 32 LPRA Ap. V, R. 36.3(a).

De igual forma, el que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. En ambos casos, por cada hecho, se tiene que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. 32 LPRA Ap. V, R. 36.3(b).

La parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente". 32 LPRA Ap. V, R. 36.3(c). Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos podrán considerarse admitidos. 32 LPRA Ap. V, R. 36.3(d). De forma similar, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados". *Íd.*

El tribunal podrá dictar sentencia sumariamente cuando, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y otra evidencia, no surja controversia real sustancial sobre algún hecho material y, además, proceda como cuestión de derecho. 32 LPRA Ap. V, R. 36.3(e).

Por su parte, la Regla 36.4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4 y su jurisprudencia interpretativa, disponen que los jueces del foro primario están obligados, cuando denieguen,

parcial o totalmente una moción de sentencia sumaria, a hacer una determinación de los hechos que han quedado incontrovertidos y aquellos que aún están en controversia. *Meléndez González et al.*, 193 DPR a la pág. 113, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da. ed., San Juan, Pubs. JTS, 2011, T. III, págs. 1074-1075.

III.

Los contratos tienen fuerza de ley entre las partes. Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994.[3] De ahí nace la definición de un contrato, a saber, la obligación de dar, hacer o no hacer una cosa. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371. La obligación contractual se configura cuando concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; y (3) causa de la obligación. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391. Al concurrir lo anterior, se perfecciona el contrato y, desde entonces, este obliga al cumplimiento de lo pactado y a todas las consecuencias que según su naturaleza sean conformes a la buena fe, el uso y la ley. Es decir, los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, *ante*; *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008); *Collazo Vázquez v. Huertas Infante*, 171 DPR 84, 102 (2007). Una vez concurren las condiciones esenciales para su validez, un contrato es obligatorio "cualquiera que sea la forma en que se haya celebrado". Art. 1230 del Código Civil, 31 LPRA sec. 3451.

Las partes contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por convenientes, siempre

---

[3] Hacemos referencia al derogado Código Civil, aún vigente al momento de los hechos.

que no sean contrarias a la ley, a la moral y al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372; *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 187 (2022); *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011); *Guadalupe Solís v. González Durieux*, 172 DPR 676, 683 (2007); *Álvarez v. Rivera*, 165 DPR 1, 17 (2005). Por ende, los tribunales no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato cuando este es legal y válido, y no contiene vicio alguno. *De Jesús González v. A.C.,* 148 DPR 255, 271 (1999).

Por otro lado, cuando una de las partes incumpla su obligación, las disposiciones de los Artículos 1054 y 1077 del Código Civil de 1930, 31 LPRA secc. 3018 y 3052, disponen las alternativas que tendrá la parte afectada. Al respecto, el Artículo 1054, *ante,* dispone que cuando una parte contratante incumple con su obligación, la otra puede exigir el resarcimiento de los daños provocados por el incumplimiento. Por su parte, el Artículo 1077, *ante,* establece que "[l]a facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe." En su segundo párrafo, el precitado Artículo 1077 añade que el "perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos".

Además, cuando existe un cumplimiento parcial o defectuoso también se puede ejercer el derecho a la resolución del contrato. No obstante, en estas situaciones el ejercicio del derecho de resolución no debe ser utilizado siempre porque la buena fe en la contratación puede imponer alguna moderación a este resultado. Solamente si el cumplimiento parcial o defectuoso implica la frustración del propósito contractual para la parte perjudicada, es que procederá la resolución del contrato. *Álvarez v. Rivera,* 165 DPR 1, 20-23 (2005).

Asimismo, si la parte que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede aducir la defensa del contrato incumplido (*exceptio non rite adimpleti contractus*). *Mora Dev. Corp. v. Sandín,* 118 DPR 733, 742 (1987). Esta defensa establece que ninguna parte puede exigir el cumplimiento de una obligación contraria sin antes cumplir o intentar cumplir su propia obligación. *Martínez v. Colón Franco, Concepción,* 125 DPR 15, 33 (1989). La excepción de cumplimiento defectuoso tiene el efecto o consecuencia de establecer que el demandado no está obligado a cumplir con su parte hasta tanto el demandante cumpla con su prestación totalmente o libre de defectos. Esta defensa no podrá invocarse con éxito en los casos en que su aplicación puede resultar contraria al principio de buena fe en la contratación o si la causa del incumplimiento parcial o defectuoso se debe a la conducta del demandado. Tampoco prevalecerá la defensa si el demandado admitió la contraprestación sin reserva ni protesta alguna cuando pudo comprobar los defectos. *Álvarez v. Rivera, supra.*

IV.

Examinado cuidadosamente el récord, a la luz del derecho esbozado, concluimos que no existe una controversia real sustancial sobre hechos materiales que le impidan al TPI dictar sentencia sumaria.

Coincidimos con el TPI en cuanto a que la Acreedora es la legítima tenedora de un pagaré hipotecario cuya obligación principal no ha sido satisfecha por los Deudores. Asimismo, concurrimos con el TPI en que la deuda está vencida, y en que la misma es líquida y exigible.

Ahora bien, contrario a lo concluido por el TPI, el récord no refleja controversia alguna en cuanto a la cuantía del principal e intereses adeudados. La Acreedora demostró cuáles fueron los

pagos realizados (incluidos aquellos que se hicieron luego del vencimiento del Préstamo), sin que los Deudores controvirtieran la prueba presentada[4]. Por tanto, el TPI está en posición de determinar la cuantía del principal no satisfecho, así como la cuantía de los intereses adeudados a la tasa pactada por las partes.

Por otra parte, coincidimos con el TPI en que el hecho de que el *Rider* no se hiciera formar parte de la hipoteca no afectó la validez y existencia de la garantía hipotecaria.

Ahora bien, contrario a lo que arguye la Acreedora, el *Rider* sí constituye un contrato que obligaba a Doral y sus sucesores. El hecho de que no se hiciera formar parte de la hipoteca no anula o hace desaparecer la existencia de esta obligación. El *Rider* cuenta con objeto, consentimiento y causa; por lo tanto, quedó constituido como un contrato privado en el cual cada parte tenía el deber de cumplir varias obligaciones con miras a refinanciar la deuda. Por un lado, los Deudores debían ser los titulares de los inmuebles (oficina y estacionamientos), estar al día en los pagos del préstamo original, el pagaré nuevo debía tener una tasa de interés a lo sumo 5% mayor a la tasa del pagaré vencido y los Deudores debían solicitarlo por escrito al tenedor del pagaré, luego de recibir la notificación y orientación contemplada en el documento.

Por su parte, bajo los términos del *Rider,* el tenedor del pagaré debía notificar a los Deudores, **antes del vencimiento del pagaré original**, sobre cuánto sería el principal e intereses de la deuda, orientarles en torno a la opción de refinanciamiento e informarles el récord de pagos. Asimismo, antes de la fecha de vencimiento, el tenedor del pagaré debía informar a los Deudores la tasa de interés

---

[4] Obra en autos copia de un desglose de los pagos en suspenso que efectuaron los Deudores y que fueron aplicados a los meses entre el 12/2011 y el 7/2012. Dicho documento formó parte de los anejos de la *Oposición a la Solicitud de Sentencia Sumaria Presentada por la Demandante Doral Bank* instada por los propios Deudores el 16 de junio del 2014. Apéndice 6 del recurso KLCE202400445, pág. 123.

del préstamo nuevo, el pago mensual y la fecha, lugar y hora para la firma de los documentos necesarios para perfeccionar el refinanciamiento.

No surge controversia del récord en torno al hecho de que Doral no cumplió con sus obligaciones bajo los términos del *Rider*. No fue hasta aproximadamente dos años luego de que venciera el último pago del Préstamo que Doral finalmente ofreció refinanciar el mismo, cosa que se suponía hiciera antes del referido vencimiento.

La naturaleza del referido incumplimiento no justifica que se anule la obligación de los Deudores de satisfacer el principal adeudado, más el interés pactado. No obstante, esta circunstancia sí justifica que se releve a los Deudores del pago de las penalidades adicionales contempladas en el Préstamo en caso de morosidad. Por tanto, al determinar la cuantía final de la deuda, el TPI deberá excluir de la misma cualquier concepto distinto al principal sin pagar y al interés pactado (por ejemplo, "cargos por demora", "costas", "gastos" u "honorarios de abogado").

V.

Por los fundamentos que anteceden, se expide el auto de *certiorari,* se revoca el dictamen recurrido y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y expuesto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones